**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TIMOTHY MATTHEWS,      *
     *
         Plaintiff,      *      Civil Action No. 06-330 GMS
      v.      *
     *
MOUNTAIRE FARMS      *
OF DELAWARE, *et al.*      *
     *
         Defendants.      *
_____/

**DEFENDANTS' OPENING BRIEF IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Roger D. Landon (Del. Bar. No. 2460)
MURPHY & LANDON
1011 Centre Road, #210
Wilmington, Delaware 19805
Telephone:  (302) 472-8100
Facsimile:   (302) 472-8135

Arthur M. Brewer (Admitted *Pro Hac Vice*)
Eric Hemmendinger
Teresa D. Teare
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD  21201
Telephone:  (410) 752-1040
Facsimile:   (410) 752-8861

*Attorneys for Defendants*

July 9, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ................................................ 1

SUMMARY OF ARGUMENT ............................................................ 2

STATEMENT OF UNDISPUTED FACTS ................................................. 4

    A.    The Betts Incident ................................................................ 4

    B.    The Plaintiff's Failure to Comply with Medical Instructions ................... 7

ARGUMENT ........................................................................ 10

    A.    Standard For Summary Judgment Under Rule 56 ................................ 10

    B.    Plaintiff Cannot State A Claim For Retaliation In Violation Of
Title VII Of The Civil Rights Act Of 1964 .................................... 11

        1.    Mr. Matthews Cannot Show He Engaged In Protected
Activity As To The Internal Complaint Regarding The Brake
Incident And The External Complaint To The State Police ......... 12

        2.    Mr. Matthews Did Not Suffer Any Adverse Employment
Action As A Result Of His Alleged Protected Activity ............... 14

        3.    There Is No Casual Connection Between The Alleged
Protected Activity And The Adverse Acts ........................... 18

        4.    Mountaire Had A Legitimate Non-Retaliatory Reason For
Mr. Matthews' Termination ........................................ 20

    C.    Plaintiff Cannot State A Claim For Discrimination Under Title VII
Of The Civil Rights Act .................................................... 21

    D.    There Is No Private Right Of Action Under The Delaware
Discrimination in Employment Act, 19 Del. C. § 711 ......................... 23

    E.    There Is No Private Right Of Action Under OSHA ............................ 24

    F.    Defendants Wells, Pascual, Pittman, Carey, And Mitchell Are Not
Employers Under Title VII .................................................. 25

CONCLUSION..............................................................................................................28

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) ........................................................10

*Atkinson v. LaFayette College*, 460 F.3d 447 (3d Cir. 2006) ...........................................21

*Babcock & Wilcox Co. v. Occupational Safety and Health Review Comm'n*,
622 F.2d 1160 (3d Cir. 1980)............................................................................................24

*Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006) ...................14, 17, 20

*Celotex Corp.  v. Catrett*, 477 U.S. 317 (1986) ................................................................10

*Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391 (7th Cir. 1997)........................22

*Cohen v. Fred Meyer, Inc.*, 686 F.2d 793 (9th Cir. 1982) ................................................19

*Crane v. Conoco, Inc.*, 41 F.3d 547 (9th Cir. 1994) ........................................................25

*Damron v. Yellow Freight Sys., Inc.*, 18 F. Supp. 2d 812 (E.D. Tenn. 1998) ..................22

*Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192 (3d Cir. 1996)................................................20

*Fullen v. Philips Elecs. N. Am. Corp.*, 266 F. Supp. 2d 471 (N.D. W.Va. 2002).............25

*Holland v. Zarif*, 794 A.2d 1254 (Del. Ch. 2002)............................................................23

*Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173 (3d Cir. 1997) ................................20

*Kosereis v. Rhode Island*, 331 F.3d 207 (1st Cir. 2003)...................................................21

*Levendos v. Stern Entm't, Inc.*, 909 F.2d 747 (3d Cir. 1990) ..........................................26

*Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421 (7th Cir. 1992) ..............................25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........................10

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) .........................................11, 21

*Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006)......................................11, 12

*Mungro v. Giant Food, Inc.*, 187 F.  Supp.  2d 518 (D. Md. 2002)..................................21

*Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991).....................................................................22

*Robinson v. City of Pittsburgh,* 120 F.3d 1286 (3d Cir.1997)...........................................20

*Schlifke v. Trans World Entm't Corp.*, 479 F. Supp. 2d 445 (D. Del. 2007)..............10, 11

*Watson v. Sears, Roebuck Co.*, 742 F. Supp. 353 (M.D. La. 1990)..................................26

*Wright v. ICI Americas, Inc.,* 813 F. Supp. 1083 (D. Del.1993) ......................................23

## Statutes

19 U.S.C. §§ 651-677 .............................................................................................................1

42 U.S.C.  § 2000e, *et seq*................................................................................................1, 26

19 Del. C. § 711 .............................................................................................................1, 23, 24

## Rules

Fed. R. Civ. P. 56...................................................................................................................10

Fed. R. Evid. 803 ..................................................................................................................14

## NATURE AND STAGE OF PROCEEDINGS

The Plaintiff, Timothy Matthews ("Mr. Matthews"),  filed a three-count Complaint against Mountaire Farms of Delaware, Inc. and six (6) individual Defendants, all of whom were or are currently employed at the Company.  The Plaintiff alleged violations of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*, the Occupational Safety and Health Act of 1970, 19 U.S.C. § 651 *et seq*., and the Delaware Discrimination in Employment Act, 19 Del. C. § 711.  The Plaintiff claims that the Defendants discriminated against him because of his race, African American, and that they violated the Occupational Safety and Health Act by not disciplining a co-worker, Mr. Wells Betts, for engaging in conduct that the Plaintiff alleges violated the statute. The Plaintiff's claims under Delaware state law are identical to those contained under Title VII of the Civil Rights Act.

As discussed more fully below, the Plaintiff's claims are merely allegations which cannot survive judicial scrutiny.

## SUMMARY OF ARGUMENT

1.     The undisputed evidence in this case shows that the Plaintiff was hired as a feed truck driver for Mountaire Farms of Delaware by Mr. Roland Lynch on March 24, 2003.  Feed truck drivers operate 80,000 lb. gross weight vehicles and require Class 3 Commercial Driver's Licenses in accordance with the Rules and Regulations of the United States Department of Transportation.

2.     The Plaintiff's allegations of racial discrimination basically revolve around three events:  (1) Mr. Betts, a co-worker,  placing coins in the air flow system of Mr. Matthews' feed truck; (2) the Company insisting that Mr. Matthews follow doctors' instructions and Company protocol in regard to his medical condition; and (3) Plaintiff's discharge for threatening a co-worker.  The Plaintiff also claims that the Defendants retaliated against him for filing a police report with the Delaware State Police and for terminating him because he filed a charge of discrimination with the Delaware Department of Labor.

3.     The undisputed evidence in this case will show that (1) the placing of coins in the air flow system (also known as "glad hands") did not create a safety hazard; (2) the Plaintiff refused to comply with instructions that he received regarding a return-to-work physical; and (3) the Plaintiff basically admitted threatening a co-worker with physical violence.  This evidence is contained in the Affidavits and exhibits thereto which are attached to this memorandum.  In addition, the evidence shows that the Company did not receive a copy of the charge the Plaintiff filed with the Delaware Department of Labor until after he was terminated.

4.    Accordingly, and for the reasons set forth in detail below, the Defendants respectfully request that summary judgment be granted in their favor.

## STATEMENT OF UNDISPUTED FACTS

**A.    The Betts Incident**

The Defendant, Mountaire of Delaware, Inc., is engaged in the business of processing poultry for retail customers at its Millsboro, Delaware plant.  The Defendant Company has a Feed Mill, which is part of the Millsboro, Delaware complex.  The Feed Mill receives and stores various forms of chicken feed.  This feed is ultimately loaded onto feed trucks, which are operated by drivers who hold a Class 3 Commercial Driver's License as required by the United States Department of Transportation.  (Affidavit of Roland Lynch, ¶ 4, attached as Ex. A).   Feed truck drivers deliver chicken feed to various farms located in rural sections on the Eastern Shore of Delaware and Maryland.

Mr. Roland Lynch is the Feed Mill Dispatch Supervisor who has been employed by the Company since 1988.  Mr. Lynch is responsible for controlling the type of feed which is delivered by feed drivers to various farmers, also known as growers.[1] Mr. Lynch interviewed and hired the Plaintiff on March 24, 2003 as a feed truck driver. (Lynch Affidavit, ¶¶ 2, 3, 5, Ex. A).

In the early part of August, 2004, the Plaintiff, Mr. Matthews, came to the dispatch office and told Mr. Lynch that he was unable to get his feed truck to move. Mr. Lynch left the dispatch office along with another driver, Mr. Steven Toomey, to inspect the Plaintiff's vehicle.  Messrs. Toomey and Lynch inspected the vehicle for a brief amount of time and looked into the air flow system, also known as the "glad hands."

---

[1] The Company places chickens at numerous farms in rural Maryland and Delaware.  The chickens remain the property of the Company and it is the Company's responsibility to provide feed to the farmer so that the chickens may eat.

There they discovered that there were two (2) quarters (.25 pieces) in the vehicle's air flow system. Placing of the coins in the air flow system ("glad hands") blocks the flow of air to the brakes which disables the vehicle and prevents it from being moved. (Lynch Affidavit, ¶¶ 6 and 7, Ex. A). Mr. Toomey removed the coins from the air flow system within a manner of minutes and recoupled the glad hands. Mr. Matthews' truck was then operable and he commenced his day's work. According to the Affidavit of Mr. Lynch, Mr. Matthews was delayed for approximately one-half hour as a result of this incident. He was compensated for his lost time. (Lynch Affidavit, ¶ 6, Ex. A).

Mr. Wells Betts, a feed truck driver employed by the Company at the Millsboro, Delaware complex stated to another truck driver, Mr. James Wise, that he had placed the coins in the air flow system of Mr. Matthews' truck. Mr. Betts did so, according to this Affidavit, because he knew Mr. Wise would tell Mr. Matthews that he was the one who placed the coins in the glad hands. (Betts Affidavit, ¶¶ 2, 7, attached as Ex. B).

Several days later, the Plaintiff approached Mr. Lynch and told him that Mr. Betts had admitted placing the quarters in the air flow system to Matthews' truck. Mr. Lynch confronted Mr. Betts and asked him if he, indeed, was the individual who had placed coins in the air flow system of Mr. Matthews' vehicle. Mr. Betts admitted that he had, in fact, done so. (Lynch Affidavit, ¶ 8, Ex. A; Betts Affidavit, ¶ 8, Ex. B).

The next day, the Plaintiff asked Mr. Lynch what he intended to do about Mr. Betts placing coins in the air flow system of his vehicle. Mr. Lynch asked Mr. Matthews what, if anything, he wanted done about it. Mr. Matthews said he wanted the matter

taken further.  Mr. Lynch told Mr. Matthews that he would take the matter up with his supervisor, Mr. Michael Stuck, the Feed Mill Manager.  (Lynch Affidavit, ¶ 9, Ex. A).

Mr. Lynch told Mr. Stuck about the incident involving Messrs. Matthews and Betts.  He also told him that Mr. Matthews wanted the matter taken further.  Mr. Stuck said it was a matter for Human Resources and told Mr. Lynch to refer it to the Human Resource Department for resolution.  Mr. Lynch followed Mr. Stuck's instructions and referred the matter to Human Resources.  (Lynch Affidavit, ¶ 10, Ex. A).

A meeting was held in the Human Resource office on August 13, 2004 to address the situation involving the Plaintiff and Mr. Betts.  Mr. Glenn Anderson, the then Director of Human Resources was present at the meeting as was Mr. Stuck, the Feed Mill Manager, Mr. Matthews, Mr. Betts, and Mr. Lynch.  During the course of the meeting, Mr. Betts admitted placing the coins in the air flow system of Mr. Matthews' vehicle.  He claimed he did so because in the latter part of July of 2004 Mr. Matthews had deliberately cut Mr. Betts off on two (2) separate occasions almost causing very serious accidents which could have resulted in severe property damage to Company vehicles and possible injury to one or both drivers.  (Betts Affidavit, ¶ 6, Ex. B).  At the meeting, the Plaintiff denied cutting Mr. Betts off.

The meeting in the Human Resource office lasted approximately one and one-half hours.  As a result, Mr. Betts was issued a Notice of Unacceptable Workplace Behavior and Final Warning on August 16, 2004.  This Final Warning stated, among other things, that any future violations of any Company policies would lead to further disciplinary action up to and including termination.  (Exhibit 1 to Betts Affidavit, ¶ 11, Ex. B).

00144227                        6

**B.    The Plaintiff's Failure to Comply with Medical Instructions**

On December 13, 2004, the Plaintiff told his supervisor, Mr. Lynch, that he would be out for a few days because he was experiencing lightheadedness and dizziness. He returned to work on December 14, 2004 with a note from his physician stating that he was suffering from lightheadedness and dizziness but he was cleared to return to work. The physician's note, however, also stated that Mr. Matthews was scheduled to have an appointment with a neurologist on December 16, 2004 for further evaluation. Mr. Matthews had suffered a similar problem with lightheadedness and dizziness the previous month. (Pittman Affidavit, ¶¶ 3, 4 and 5, attached as Ex. C).

Mr. Matthews returned to work on December 14, 2004. He provided the Company with a doctor's note from his attending physician stating that he was cleared to return to work. (Exhibit 1 to Pittman Affidavit, ¶ 4, Ex. C). Mr. Lynch saw the Plaintiff on December 14 and asked him how he was feeling and whether he was still experiencing any form of dizziness. Mr. Matthews responded that he was not 100% and was still having some dizzy spells. (Lynch Affidavit, ¶ 17, Ex. A). At this point, Mr. Lynch called Ms. Lori Carey, a Licensed Practical Nurse in the Company's Medical Department, and inquired why Mr. Matthews had been cleared to return to work when he was still experiencing dizzy spells. Ms. Carey said she would contact the head of the Company's Medical Department, Ms. Claudia Pittman, RN, and get back to him. A few minutes later, Ms. Carey told Mr. Lynch that Ms. Pittman stated that Mr. Matthews could not be returned to work if he was experiencing dizzy spells and that he should keep his

appointment with the neurologist which was scheduled for December 16, 2004. (Lynch Affidavit, ¶ 18, Ex. A; Pittman Affidavit, ¶ 6, Ex. C).

Mr. Matthews returned to work on December 16, 2004 and presented the Company with another note from his attending physician, Dr. Rosas, which stated that he was cleared to return to work without restrictions. (Pittman Affidavit, ¶ 7, Ex. C). For reasons known only to the Plaintiff, he did not follow the instructions of his attending physician and had not seen the neurologist on December 16 as scheduled. Accordingly, the Company advised Mr. Matthews that he could not return to work until he had been seen and cleared by the neurologist. (Pittman Affidavit, ¶ 7, Ex. C).

Ms. Pittman received a note from Dr. Ahuja, a neurologist on December 21, 2004, stating that Mr. Matthews could return to work. (Pittman Affidavit, ¶ 8, Ex. C). The note did not state whether Mr. Matthews had any restrictions with regard to his driving. The note stated that if the Company had any questions it should call the doctor. (Exhibit 2 to Pittman Affidavit, ¶ 8, Ex. C).

Ms. Carey spoke with Dr. Ahuja that same day to inquire whether the Plaintiff could return to work without any restrictions. Dr. Ahuja explained that Mr. Matthews had a medical condition that could cause him to experience dizzy spells at any time. Ms. Carey advised Dr. Ahuja that Mr. Matthews was a truck driver and the physician stated that if Mr. Matthews was driving a vehicle when a dizzy spell occurred, he was not to drive, but rather to pull over to the side of the road. Ms. Carey advised Ms. Pittman of the comments made to her by Dr. Ahuja and Ms. Pittman decided that she needed expert assistance from the Milford Occupational Health Group, which is the organization used

by the Company to conduct Class 3 Commercial Driver's License physicals for its truck drivers.  (Pittman Affidavit, ¶ 9, Ex. C).

The following day, December 22, 2004, Ms. Pittman called the Milford Occupational Health Group and advised them of Mr. Matthews' situation.  Personnel at the Milford Occupational Health Group advised Ms. Pittman that Mr. Matthews would need a "fit for duty" exam before he could be returned to work.  (Pittman Affidavit, ¶ 10, Ex. C).  The exam was scheduled to take place on January 6, 2005, which was their next available appointment.

Mr. Matthews kept his scheduled appointment and, on January 6, 2005, Dr. Dilts, the Director of Occupational Health at the Milford Center called Ms. Pittman and advised her that Mr. Matthews was cleared to return to work.  (Pittman Affidavit, ¶ 12, Ex. C). Mr. Matthews did not return to work on January 6, but rather on January 7, 2005.  Upon his return to work, he was suspended by Mr. Lynch pending an investigation into the allegations that he had threatened Mr. Johnson, a dispatcher, with physical violence on the evening of December 8, 2004.   (Exhibit 1 to Lynch Affidavit, ¶ 19, Ex. A; Johnson Affidavit, ¶ 3, attached as Ex. D).  Mr. Matthews was given a disciplinary suspension and advised to call the Company on January 11, 2005 to ascertain his status. *Id*.   Mr. Matthews did not call the Company and was terminated on January 11, 2005 for threatening a co-worker.  (Exhibit 2 to Lynch Affidavit, ¶ 19, Ex. A).

**ARGUMENT**

**A.  Standard For Summary Judgment Under Rule 56**

A moving party is entitled to summary judgment if it can demonstrate that:  (1) there is no genuine dispute as to any material fact; and (2) summary judgment is appropriate as a matter of law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Schlifke v. Trans World Entm't Corp.*, 479 F. Supp. 2d 445, 449 (D. Del. 2007). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Id.* at 449.

If the non-moving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the district court is required to grant summary judgment.  *Celotex Corp.  v. Catrett*, 477 U.S. 317, 322-24 (1986).  In order to meet this burden, the non-moving party must produce evidence that would permit the district court to conclude that a fair-minded jury could return a verdict for that party on the evidence presented.  "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff."  *Anderson,* 477 U.S. at 250.

Furthermore, in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the Court stated that, if a plaintiff's claim is, in the judge's view, "implausible" and "makes no . . . sense," a plaintiff "must [in order to defeat summary

judgment] come forward with more persuasive evidence to support [his] claim than would otherwise be necessary." The Court also stated that, if the moving party makes a compelling case for summary judgment, the party opposing summary judgment must "tend to exclude the possibility" that the defendant's actions were for legitimate rather than illegitimate reasons. *Id.* at 588. The court must "determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Schlifke*, 479 F. Supp. 2d at 450 (citations omitted).

Accordingly, Defendants submit for the reasons set forth below, the Motion for Summary Judgment should be granted because there is no dispute as to the material facts. Simply put, Defendants' actions in terminating the Plaintiff, were based on a legitimate and non-discriminatory reason.

### B.  Plaintiff Cannot State A Claim For Retaliation In Violation Of Title VII Of The Civil Rights Act Of 1964.

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action either after or contemporaneously with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973); *Moore v. City of Philadelphia*, 461 F.3d 331, 340 -341 (3d Cir. 2006).

The Plaintiff alleges the following in his Amended Complaint:  (1) he engaged in protected activity by reporting the August 2004 incident regarding his brakes internally to

the Company, reporting the same incident to the state police, and filing a complaint of discrimination with the Delaware Department of Labor; (2) Defendants took adverse action against him by making him produce doctors' notes, sending him on a "goose chase" to various physicians, denying him the right to return to work during his leave, placing him on short term disability, and finally terminating his employment for threatening behavior; and (3) the adverse action is linked to the Plaintiff's protected activity. (D.I. 13, Amended Complaint, p. 11, ¶ 45). Plaintiff has, however, failed as a matter of law to establish a *prima facie* case of retaliation under Title VII.

> **1. Mr. Matthews Cannot Show He Engaged In Protected Activity As To The Internal Complaint Regarding The Brake Incident And The External Complaint To The State Police.**

Mr. Matthews' alleged protected activities, aside from filing a charge of discrimination (which, as discussed in detail below, was unknown to the Defendants at the time of termination) do not meet the Title VII threshold. Indeed, while the anti-retaliation provision of the statute protects those who participate in certain Title VII proceedings and those who oppose discrimination made unlawful by Title VII, the employee must hold an objectively reasonable belief, in good faith, that the activity he opposes is unlawful under Title VII. *Moore*, 461 F.3d at 341 (citations omitted). Opposition to discrimination may be in informal protests of discriminatory employment practices, including making internal complaints to management. *Id.* at 343. It, however, is necessary to "look to the message being conveyed rather than the means of conveyance." *Id.* (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,* 450 F.3d 130, 135 (3d Cir. 2006)).

Here, Mr. Matthews alleges that he engaged in protected activity in three contexts:  (1)  reporting the August 2004 incident regarding his brakes internally to Mountaire; (2)  reporting the same incident to the state police; and (3) filing a complaint of discrimination with the Delaware Department of Labor.  (D.I. 13, Amended Complaint, p. 11, ¶ 45(a)).   These claims are addressed seriatim below.

First, regarding the internal complaint about Mr. Betts' "prank", the message being conveyed by Mr. Matthews in complaining was not that there was a racial animus or prejudice, but rather that there was a problem between two individuals – Mr. Betts and Mr. Matthews.  Matthews was concerned primarily with his safety and not with discrimination.  This conclusion is buttressed by the Plaintiff's allegations that the Betts incident violated OSHA.  Indeed, Mr. Betts was candid in his reasons for placing the quarters in the "glad hands."  Exhibit B, Affidavit of Wells Betts.  He stated to Mr. Matthews and to his supervisor, Roland Lynch, that he was simply getting back at Mr. Matthews who had purposely cut him off on two occasions.  *Id.* at ¶ 5-6.  Accordingly, Mr. Matthews' internal complaint was not protected activity:  he was not complaining about discrimination; he was complaining about his safety.

Second, Mr. Matthews claims that he reported the incident to the police. Amended Complaint, p. 11 ¶ 49(a).  Mr. Matthew's complaint to the State Police, however, came on December 22, 2004, five months after the August 2004 brake incident. Regardless, the message in this report was that Mr. Matthews was concerned for his safety. (D.I. 13, Amended Complaint, Exh. 5).  The incident overview states: "V1 alleges that S1 placed two quarters in the air lines that connect the truck air brakes to the air

brakes on the trailer." *Id.* The crimes are listed as "aggravated assault/non-family other

dangerous weapon" and "motor vehicle/used as a weapon." *Id.* Mr. Matthews was not

engaged in protected activity in filing this report. Clearly, he could not have objectively

and in good faith believed that he was opposing <u>discriminatory</u> conduct by filing a police

report. His message again is crucial: he is simply concerned with his safety and not with

alleged discrimination by Mr. Betts or the Company.

Therefore, the <u>only operative</u> protected activity for which Mr. Matthews can

claim is his charge of discrimination with the Delaware Department of Labor. Although

Defendants concede that this is protected activity, as discussed below, the Defendants did

not receive notice of the Charge of Discrimination until January 12, 2005, and thus, there

was no casual connection between the two because Mr. Matthews was terminated on

January 11, 2005. (Exhibit 2 to Lynch Affidavit, Ex. A; copy of September 5, 2005 letter

from Trina R.D. Wheedleton, Labor Law Enforcement Officer II, Delaware Department

of Labor,[2] attached as Ex. E). *See also* discussion *infra* Section B.3.

### 2. Mr. Matthews Did Not Suffer Any Adverse Employment Action As A Result Of His Alleged Protected Activity.

Title VII's "anti-retaliation provision protects an individual not from all

retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa*

*Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414 (2006). Thus, "a plaintiff must show that a

reasonable employee would have found the challenged action materially adverse, which

in this context means it well might have dissuaded a reasonable worker from making or

---

[2] Admissible under Fed. R. Evid. 803.

supporting a charge of discrimination." *Id.* at 2415 (internal quotations omitted). The majority of the alleged actions that the Plaintiff sets forth were not adverse, but simply based on Company protocol.

Mr. Matthews alleges the following as adverse actions: (1) refusal of the Company to accept his doctors' notes; (2) being sent on a goose chase to various physicians; (3) denial of the right to return to work because of a medical condition; (4) being placed on short term disability; and (5) being immediately terminated for threatening behavior.

The first four alleged adverse actions resulted directly from Mr. Matthews' health condition and his abject refusal to follow explicit instructions. They had *absolutely nothing* to do with Mr. Matthews' internal complaint regarding the incident in August with Mr. Betts. Rather, the month-long ordeal regarding Mr. Matthews' health condition was simply a matter of safety for both Mr. Matthews and the Company. It was not based on his race or in retaliation for any complaints Mr. Matthews had made.

It is undisputed that several months after the brake incident, Mr. Matthews called in sick on December 13, 2004. (D.I. 13, Amended Complaint, p. 5 ¶ 15; Pittman Affidavit, ¶ 3, Ex. C). When Mr. Matthews returned to work on December 14, 2004 he had a doctor's note stating that he was suffering from lightheadedness and dizziness. (Pittman Affidavit, ¶ 4, Ex. C). The note also stated that Mr. Matthews had an appointment with a neurologist for December 16, 2004. *Id.* When Mr. Matthews returned to work on December 14, 2004, he told Ms. Lori Carey, LPN, that he was still having dizzy spells. *Id.* at ¶ 6. The medical center could not safely clear Mr. Matthews

to drive a tractor trailer while having dizzy spells. *Id.* Clearly, the Company was concerned with the safety of Mr. Matthews and others on the road.[3] Thus, Ms. Pittman told Mr. Matthews that if the neurologist cleared him to return to work without restrictions, he could return to work. *Id.*

Mr. Matthews attempted to return to work on December 16, 2004, but presented the Company with a second note from <u>Dr. Rosas</u> (not the neurologist) stating that he was cleared to return to work without restrictions. *Id.* at ¶ 7. Mr. Matthews did not keep his appointment with the neurologist which he was unequivocally told to do before he could return to work. *Id.* Mr. Matthews was told a second time that he could not return to work until he was cleared by the neurologist.

On December 21, 2004, Mr. Matthews presented a note from the neurologist, Dr. Ahuja, stating that Mr. Matthews could return to work. *Id.* at ¶ 8; *see also* D.I. 13, Amended Complaint, Exh. 4. It did not state whether he had any restrictions with regard to driving. *Id.* Lori Carey, LPN, called and spoke directly to Dr. Ahuja. (Pittman Affidavit, ¶ 9). He explained that Mr. Matthews had a medical condition called BPPV; a particle floating loose in the inner ear which can cause dizziness at any time. *Id.* Ms. Carey told Dr. Ahuja that Mr. Matthews was a truck driver and drove an 80,000 lb. gross weight vehicle. *Id.* at ¶ 9. Dr. Ahuja stated that Mr. Matthews must pull the truck over if he got dizzy and not drive. *Id.*

---

[3] Mr. Matthews operated a 80,000 pound tractor trailer and if he became disoriented during operation by passing out or becoming lightheaded, a major traffic accident could result.

On December 22, 2004, 8:30a.m., Ms. Pittman called Milford Occupational Health. *Id.* at ¶ 10. It was determined by the physicians at Milford that Mr. Matthews would need a "fit for duty" exam before he could return to work. The exam was scheduled it for January 6, 2005, the next available appointment. *Id.* On January 6, 2005, Dr. Dilts, DO, Director of Occupational Health cleared Mr. Matthews because all symptoms had been resolved. *Id.* at ¶ 12; *see also* D.I. 13, Amended Complaint, Exh. 10).

Thus, Plaintiff's allegations that the Company engaged in adverse action by refusing to accept his doctors' notes; sending him on a goose chase to various physicians; denying him the right to return to work because of a medical condition; and placing him short term disability, were not adverse actions. These actions were simply and unequivocally the Company's complying with their own internal safety procedures and DOT regulations. They had absolutely nothing to do with Mr. Matthews' complaint against Mr. Betts. Indeed, "petty slights or minor annoyances that often take place at work and that all employees experience" will not rise to the level of adverse actions. *Burlington*, 126 S. Ct. at 2415.

Thus, the only operative adverse action that the Plaintiff can theoretically claim is his termination on January 11, 2005. As discussed below, however, there is no casual connection between the alleged protected activity and his termination.

### 3.    There Is No Casual Connection Between The Alleged Protected Activity And The Adverse Acts.

Mr. Matthews alleges that he engaged in protected activity when he filed a charge of discrimination with the Delaware Department of Labor, which was not received by the Company until January 12, 2005.  (Ex. E).

There is no casual connection, however, between the alleged protected activity and any action on the part of the Company.[4]

The Plaintiff was terminated on January 11, 2005 based on an incident that occurred on December 8, 2004.  Exhibit 2, Affidavit of Roland Lynch.  The circumstances leading to Mr. Matthews' termination had nothing to do with his alleged protected activity.

On December 8, 2004, Mr. Johnson was on duty at 12:15 a.m.  (Johnson Affidavit, ¶ 3, Ex. D).  When Mr. Johnson arrived at work, he observed that the shuttles which cause feed to be released from bins into the feed trucks were not working.  He began to investigate the problem.  Plaintiff, Mr. Matthews, approached him in a confrontational manner and stated that he was "being delayed."  *Id.*  Mr. Johnson replied that he was attempting to fix the problem with the shuttles.  Later, Mr. Matthews threatened Mr. Johnson in the dispatch office by cowering over him and stating that, "somebody is going to get his freakin' head slapped."  *Id.*

---

[4] Indeed, the *only basis for the requested medical documentation* and leave of absence was Mr. Matthews' own produced doctor's notes, which indicated he was experiencing dizziness and lightheadedness.  The Company could not clear him to drive an 80,000 pound truck before taking the proper, safety-oriented steps

Mr. Johnson called Roland Lynch, and informed him of the situation.  (Lynch Affidavit, ¶ 15, Ex. A).  Mr. Johnson reported that he felt threatened by Mr. Matthews and that he was upset and was going to go home immediately.  *Id.*  Mr. Johnson then put Mr. Matthews on the phone and Mr. Matthews continued to accuse Mr. Betts and Mr. Johnson of holding him up.  *Id.*

The matter was reported to Human Resources on December 9, 2004.  Only a few days later, Mr. Matthews went on medical leave (December 13, 2004) until he was cleared for work on January 6, 2005.  Immediately upon his return from medical leave, Mr. Matthews was suspended for three (3) days pending the outcome of the investigation involving the threat he made to Mr. Johnson.  *Id.* at ¶ 19, Exh. 1.  He was instructed to contact the Human Resources Department on January 11, 2005 to inquire as to the outcome of his suspension.  *Id.*  Mr. Matthews *never called* and was terminated effective January 11, 2005 for threatening Mr. Johnson, the dispatcher.  *Id.*, Exh. 2.

Although Mr. Matthews filed a charge of discrimination on December 27, 2005, while on leave, the charge was not mailed to the Defendant until January 6, 2005.  More importantly, it was not received by the Defendant until January 12, 2005.  (Ex. E).  Clearly, the employer must have knowledge of protected activity.  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) ("[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity").  Here, the Plaintiff was placed on suspension pending the investigation on January 7, 2005.  The Defendants had not received the charge, nor did the decision-maker, Roland Lynch have any knowledge of the charge.

It is well settled that the closeness in the timing alone is not enough to establish a causal connection between the protected activity and the adverse action. *See Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1302 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White,* 126 S. Ct. 2405 (2006). Indeed, the mere fact that an adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link. *Id.* "Causation, not temporal proximity itself, is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

Thus, because Defendants did not know of the charge of discrimination which was received after the decision to terminate Mr. Matthews had been made (January 11, 2005), there can be no causal connection between any protected activity and the final adverse action of his termination.

### 4. Mountaire Had A Legitimate Non-Retaliatory Reason For Mr. Matthews' Termination.

If the Plaintiff succeeds in showing a *prima facie* case of retaliation, the burden of production (although not the burden of persuasion) "shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse action." *Delli Santi v. CNA Ins. Companies*, 88 F.3d 192, 199 (3d Cir. 1996) (citation omitted). "If the employer comes forward with evidence showing some legitimate non-retaliatory reason, the employee still has the opportunity to produce evidence sufficient to persuade the factfinder by a preponderance of the evidence that the employer nevertheless harbored a discriminatory intent." *Id.* The employee can make this showing by producing evidence "the articulated

reason is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer." *Id. See also, Atkinson v. LaFayette College*, 460 F.3d 447, 455 (3d Cir. 2006); *Mungro v. Giant Food, Inc.*, 187 F. Supp. 2d 518, 523 (D. Md. 2002) (holding that employer offered a legitimate, non-discriminatory reason for the discharge of African-American truck driver who violated company policy).

Mr. Matthews' termination was clearly based on a legitimate and nondiscriminatory reason:  Mr. Matthews threatened another co-worker with physical violence.   The Plaintiff was first suspended pending an investigation into his conduct when he told another employee that "someone was going to get his freakin' head slapped."   The determination to terminate Mr. Matthews was made by Mr. Lynch and was based on Company non-written procedures of suspending the employee pending investigation.  Mr. Lynch made the decision to terminate Mr. Matthews because he threatened the dispatcher and with no discriminatory intent.  Accordingly, Plaintiff's claim for retaliation under Title VII of the Civil Rights Act of 1964, *as amended*, fails as a matter of law.

### C.   Plaintiff Cannot State A Claim For Discrimination Under Title VII Of The Civil Rights Act.

Furthermore, Plaintiff claims Defendants discriminated against him because he is an African-American.  (D.I. 13, Amended Complaint, p. 3).  Under the applicable *McDonnell Douglas* analysis, the issue is whether the employer's actions were improperly motivated by discrimination.  *See Kosereis v. Rhode Island*, 331 F.3d 207, 213-214 (1st Cir. 2003) (citing *Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir.2000)). Mr. Matthews alleges that he was treated differently than other similarly situated

employees.  (D.I. 13, Amended Complaint, p. 5, ¶12 (arguing that Mr. Betts was not suspended, nor fired, but Plaintiff was immediately terminated)).  He further asserts that no one else was terminated on the spot.  (D.I. 13, AmendedComplaint, p. 9, ¶ 35).

Mr. Matthews, however, was treated the same as other employees.  Indeed, it is the Company's policy to suspend employees pending an investigation, and then terminate the employee.  Mr. Matthews was suspended pursuant to that policy and was told to call in regarding his employment.  Mr. Matthews, however, failed to call in and was terminated.

Moreover, courts have held that when an employee is hired and fired by the same decision-maker, a presumption, or inference, of nondiscrimination arises.  *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 399 (7th Cir. 1997); *Damron v. Yellow Freight System, Inc.*, 18 F. Supp. 2d 812, 834 (E.D. Tenn. 1998) (stating that "[l]ogic dictates that if [the decisionmaker] was motivated by age discrimination, he never would have hired [the employee] in the first place").  In *Proud v. Stone*, 945 F.2d 796, 797-798 (4th Cir. 1991), the Court of Appeals for the Fourth Circuit succulently stated that "[c]laims that employer animus exists in termination but not in hiring seem irrational."

Therefore, in cases where the decisionmaker is the same individual, as in this case, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.  Here, Roland Lynch hired Mr. Matthews on March 23, 2003.  (Lynch Affidavit, ¶ 5, Ex. A).  Mr. Lynch also was responsible for his termination.  *Id.*, Ex. 2.  Accordingly, the logical inference is that there was no discrimination.

The Plaintiff has offered no facts regarding his allegations that he was subject to disparate treatment based on his race, African-American.  Indeed, he was not subject to disparate treatment.

> **D.    There Is No Private Right Of Action Under The Delaware Discrimination in Employment Act, 19 Del. C. § 711.**

The Plaintiff also sets forth a claim for violation of the Delaware Discrimination in Employment Act, 19 Del. C. § 711.  (D.I. 13, Amended Complaint, p. 3).  In *Holland v. Zarif*, 794 A.2d 1254, 1258 (Del. Ch. 2002), however, the Court of Chancery of Delaware stated unequivocally that the Act does not create a private right of action.  The court stated:

> The State Discrimination Act does not contain any similar process [to Title VII] by which complainants are given the opportunity to bring a private cause of action in the event the Department dismisses a complaint or, as in this case, refuses to even accept a charge.  The General Assembly did not include in the Act the "right-to-sue" process used under Title VII. The Act has been amended since the Title VII process has been in place, but not to create a private right of action for complainants modeled on Title VII.  Furthermore, courts interpreting the Act have held that it creates no private right of action independent of the administrative procedures set forth in the Act itself.  *Id.* at 1258.[5]

In *Wright v. ICI Americas Inc.*, 813 F. Supp. 1083, 1090-91 (D. Del. 1993), an African-American employee brought an action alleging discrimination under the Delaware discrimination law.  The United States District Court for the District of Delaware explained that while an aggrieved employee may file a claim of discrimination with the Delaware Department of Labor under the state statute, "[n]owhere, within [the] detailed

---

[5] Citing *Chalawsky v. Sun Refining & Marketing Co., Inc.*, 733 F. Supp. 791, 799-800 (D. Del. 1990); *Wright v. ICI Americas, Inc.,* 813 F. Supp. 1083 (D. Del.1993.

statutory framework is there even a suggestion of private remedies for aggrieved employees." *Id.* at 1091. The court found it clear that "the express procedural scheme set forth in the statute only contemplates judicial review after the review board has issued its findings." Further, the court stated that it agreed with the defendant's argument that Delaware's discrimination law does not state a viable cause of action and granted summary judgment as to the plaintiff's claims.

Accordingly, because there is no private cause of action under 19 Del. C. § 711, the Defendants are entitled to summary judgment regarding the Plaintiff's claims under the state statute.

### E.  There Is No Private Right Of Action Under OSHA.

Additionally, Plaintiff claims that the Defendants intentionally violated the Occupational Safety and Health Act (OSHA) Section 5(a)(1) when "they failed to protect the Plaintiff who was placed in a threatening environment that could have caused him bodily harm." (D.I. 13, Amended Complaint, p. 3). OSHA "requires an employer to 'furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.'" *Babcock & Wilcox Co. v. Occupational Safety and Health Review Comm'n*, 622 F.2d 1160, 1164 (3d Cir. 1980) (citing 29 U.S.C. s 654(a)(1) (1976)).

In this case, the Plaintiff was never placed in a hazardous condition which could have caused death or serious injury. As the Plaintiff states, on August 15, 2004, Wells Betts placed quarters in the brake lines of a company vehicle assigned to Mr. Matthews.

D.I. 13, Amended Complaint, p. 4, ¶ 2).  This action caused an obstruction in the air ways

of the break lines of the vehicle.  *Id.*  As Mr. Betts relates, the only result of placing the

quarters in "glad hands" of the trailer brakes was to render the truck immovable.  (Betts

Affidavit, ¶ 7, Ex. B).  There was no hazard; indeed, the truck was immobile.  (Lynch

Affidavit, ¶ 7, Ex. A).  Mr. Matthews was not harmed; rather, he was simply

inconvenienced.

More importantly, however, OSHA does not authorize private enforcement and

creates no private right of action.  *Fullen v. Philips Elec. N. Am. Corp.*, 266 F. Supp. 2d

471, 477 (N.D. W.Va. 2002) (citing *Wickham v. Am. Tokyo Kasei, Inc.,* 927 F. Supp. 293,

295 (N.D. Ill.1996)).  *See also Crane v. Conoco, Inc.*, 41 F.3d 547 (9th Cir. 1994)

(violation of OSHA regulations do not create a private cause of action); *Mason v.

Ashland Exploration, Inc.*, 965 F.2d 1421 (7th Cir. 1992) (employee of independent

contractor had no private right of action based on Occupational Safety and Health Act

against operator of workplace who allegedly violated Act).  Thus, Mr. Matthews has no

cause of action under OSHA, and summary judgment should be granted as to that

specific count.

### F. Defendants Wells, Pascual, Pittman, Carey, And Mitchell Are Not Employers Under Title VII.

Finally, Plaintiff brought suit against Defendants Wells Betts, Al Pascual, Jr.,

Claudia Pittman, Lori Carey, and Linda Mitchell apparently as agents of Mountaire

Farms of Delaware, Inc.  These Defendants, however, were not Mr. Matthew's employer

and should not be treated as such.

Title VII declares certain actions of an "employer" to be unlawful, and in order to prevail, the Defendants must be found to be Matthew's employer. *See Watson v. Sears, Roebuck Co.*, 742 F. Supp. 353, 357 (M.D. La. 1990) (holding that an employment discrimination action could not be maintained against two defendants who never made employment decisions as to the plaintiff). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any *agent* of such a person...." 42 U.S.C. 2000e(b). In order to establish that a defendant is an employer or agent of the employer, there must be evidence showing that the individual made promotional decisions or ordered retaliatory actions. *Id; see also Levendos v. Stern Entern., Inc.*, 909 F.2d 747, 752 (3d Cir. 1990) ("[a] person is an agent under § 2000e(b) if he participated in the decision-making process that forms the basis of the discrimination.").

In the case at bar, Wells Betts was simply a co-worker of Mr. Matthews. Mr. Betts, similar to Mr. Matthews, was a Feed Truck Driver. (Betts Affidavit, ¶¶ 2, 4, Ex. B.) Mr. Betts had no authority over Mr. Matthews, made no hiring, firing, promotions, or other employment-related positions with regards to any other employee, including Mr. Matthews. Accordingly, Mr. Betts is not a proper defendant to this matter.

Similarly, Mr. Al Pascual, Jr., a former employee of Mountaire Farms, made no employment related decisions as to Mr. Matthews. Mr. Pascual was employed in the Human Resources Department. He was not involved in the Plaintiff's termination. Mr. Pascual is not a proper defendant to this matter.

Claudia Pittman is employed by Mountaire Farms as an Registered Nurse. (Pittman Affidavit, ¶ 2, Ex. C). Ms. Pittman had the responsibility of overseeing the Mountaire Medical Department, and was, therefore, involved in Mr. Matthew's leave of absence in December 2004. *Id.* at ¶¶ 3-13. She made no decisions, however, with regards to Mr. Matthew's hiring, promotions, or terminations. Likewise, Mr. Lori Carey, a Licensed Practitioner Nurse, was involved Mr. Matthew's medical leave of absence in December 2004. *See id.* at ¶ 6. Like Ms. Pittman, however, Ms. Carey did not make any decisions or influence any decisions regarding the employment of Mr. Matthews. Ms. Pittman and Ms. Carey are improperly named as Defendants.

Finally, Linda Mitchell is no longer an employee of Mountaire Farms. While she was employed, she had no role in the hiring, promoting, or termination of Plaintiff. She, too, is an improper Defendant.

Accordingly, summary judgment should be granted as to exclude Defendants Wells Betts, Al Pascual, Jr., Claudia Pittman, Lori Carey, and Linda Mitchell from this suit. If the Court finds that summary judgment is not appropriate as outlined above as to all of the Plaintiff's claims, the only proper Defendants should be Mountaire Farms of Delaware, Inc. and Mr. Roland Lynch, as the employers of Mr. Matthews.

## CONCLUSION

For all the foregoing reasons, Defendants submit that summary judgment should be granted and Plaintiff's Complaint dismissed in its entirety.

Respectfully submitted,


*/s/ Roger D. Landon*
Roger D. Landon (Del. Bar. No. 2460)
MURPHY & LANDON
1011 Centre Road, #210
Wilmington, Delaware 19805
Telephone:  (302) 472-8100
Facsimile:   (302) 472-8135


*/s/ Arthur M. Brewer*
Arthur M. Brewer (Admitted *Pro Hac Vice*)
Eric Hemmendinger
Teresa D. Teare
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD  21201
Telephone:  (410) 752-1040
Facsimile:   (410) 752-8861

*Attorneys for Defendants*


July 9, 2007

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that Defendants' Motion for Summary Judgment, Opening Brief in Support of Motion for Summary Judgment and Appendix to the Opening Brief were served this 9th day of July, 2007, by First Class mail, postage prepaid, upon:

      Timothy Matthews
      P. O. Box 1453
      Seaford, DE  19973


                             */s/ Roger D. Landon*
                             Roger D. Landon, No. 2460